[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 8, 2011
JOHN LEY
CLERK

No. 09-15846

_____

D. C. Docket No. 05-00334-CV-ORL-31-GJK

AUTO-OWNERS INSURANCE COMPANY,

Plaintiff-Appellee,

versus

SOUTHEAST FLOATING DOCKS, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 8, 2011)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

In this offer of judgment case, we certify three questions to the Florida

Supreme Court, seeking guidance as to the application of Florida's offer of

judgment statute, Fla. Stat. § 768.79, and Florida Rule of Civil Procedure 1.442.

First, we inquire whether an offer of judgment may be viable when filed under the following circumstances: the offer was filed by a defendant after a jury verdict for the defendant had been set aside by the district court's grant of a new trial, and after the new trial date had been scheduled, but more than 45 days before the scheduled retrial; and the defendant ultimately prevailed because the appellate court reversed the grant of a new trial and reinstated the initial verdict. Second, we ask whether the term "joint proposal" in Rule 1.442(c)(3) applies to cases where acceptance of the offer is conditioned upon dismissal with prejudice of an offeree's claims against an offeror and a third party. Finally, we seek a determination of whether the Florida offer of judgment statute applies to actions filed in Florida, in which there exists a contractually agreed upon choice-of-law clause providing for the application of the substantive law of another state. We certify these questions because we are unable to find definitive answers in clearly established Florida law, either case law or statutory. "Where there is doubt in the interpretation of state law, a federal court may certify the question to the state supreme court to avoid making unnecessary Erie guesses and to offer the state court the opportunity to interpret or change existing law." Tobin v. Mich. Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir. 2005) (per curiam).

I. FACTS AND PROCEDURAL HISTORY

2

Plaintiff and Defendant are in virtual agreement as to the facts of this case. Auto-Owners Insurance Company ("Auto-Owners") insured the performance of Southeast Floating Docks, Inc. ("Southeast") pursuant to a contract between Southeast and Rivermar Contracting Company ("Rivermar"). Southeast was to build a floating dock for Rivermar. A dispute arose between Rivermar and Southeast as to whether the contract had been properly performed, and Rivermar sued Southeast and Auto-Owners. Auto-Owners agreed to settle the case with Rivermar for $956,987.00. In turn, Auto-Owners commenced the instant suit, seeking indemnification from Southeast based on a written agreement between it and Southeast (and its president, Alan L. Simpson[1]). Southeast and Simpson contended that they were not responsible for indemnifying Auto-Owners because the surety payments to Rivermar were made in bad faith.

On June 1, 2006, the jury returned a verdict in favor of Southeast, finding that Auto-Owners had settled with Rivermar in bad faith, and thus finding that Southeast had no liability to Auto-Owners. Judgment was entered on Southeast's behalf the next day. Shortly thereafter, Auto-Owners filed a motion for a new trial in the district court, and the motion was granted in September of that year. On September 25, 2006, the district court scheduled a retrial for April 2, 2007.

---

[1] Simpson is not a party to this appeal.

3

On December 11, 2006, more than 6 months after the conclusion of the first trial and 4 months in advance of the scheduled second trial, Southeast sent Auto-Owners the § 768.79 proposal for settlement that is the subject of this appeal.[2] In the proposal, Southeast offered to settle the case by paying Auto-Owners $300,000, provided that Auto-Owners agree to resolve and dismiss with prejudice all claims asserted in this action by Auto-Owners against Southeast and Alan L. Simpson, including attorney's fees. Auto-Owners did not accept the settlement offer, and the case continued to proceed toward a second trial.

On March 1, 2007, the district court granted Auto-Owners's motion for summary judgment and, ultimately, entered an award of $1,135,658.98 in its favor. Southeast appealed from this judgment on July 18, 2008. That appeal argued, among other matters, that the court's grant of the motion for a new trial was erroneous.

On June 16, 2009, this Court reversed the district court's grant of a new trial and reinstated the jury verdict in favor of Southeast from the first trial. Southeast subsequently filed the motion for attorney's fees that is the subject of this appeal.

---

[2]     We use the terms offer of judgment, proposal for settlement, demand for settlement, and shortened versions thereof interchangeably, as these terms are used interchangeably in § 768.79 and Rule 1.442.

The district court denied the attorney's fees motion, finding that Southeast had failed to comply with the requirement in Florida Rule of Civil Procedure 1.442(b) that an offer of judgment be served at least 45 days in advance of trial. The district court held that the trial date in question was that of the first trial, which had occurred several months before the settlement offer. Thus, Southeast's proposal was deemed untimely. Auto-Owners opposed Southeast's motion on several other grounds, but the district court declined to reach them because they did not affect its disposition of the case. These issues are also addressed in this appeal.

## II. DISCUSSION

### A. Was Southeast's offer of judgment rendered non-viable by the 45-day requirement in Rule 1.442?

The issue here is whether Southeast's offer of judgment, which came after the first trial had ended but more than 45 days in advance of the scheduled second trial, was timely according to Rule 1.442. Section 768.79(1) provides, in relevant part:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf . . . if the judgment is one of no liability . . . .

Fla. Stat. § 768.79(1). Florida Rule of Civil Procedure 1.442 controls the process

for making offers of judgment and states, in relevant part:

> No proposal shall be served later than 45 days before the date set for
> trial or the first day of the docket on which the case is set for trial,
> whichever is earlier.

Fla. R. Civ. P. 1.442(b). Because the Florida offer of judgment statute provides for

attorney's fees in derogation of the common law, the statute, and its accompanying

rule of procedure, must be strictly construed. See Campbell v. Goldman, 959 So.

2d 223, 226–27 (Fla. 2007); Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 849 So.

2d 276, 278 (Fla. 2003).

The language of Rule 1.442 is not clear as applied to the current controversy.

The word "trial" could be used to refer to either the first or second trial in this case

or to both. Southeast supplies several examples of persuasive authority that have

held that an offer of judgment can be made after the first phase of trial has been

completed in a bifurcated trial scenario. See, e.g., Cover v. Chi. Eye Shield Co.,

136 F.2d 374 (7th Cir. 1943); Allianz Ins. Co. v. Gagnon, 860 P.2d 720 (Nev.

1993) (per curiam). Typically, these bifurcated trials are comprised of separate

trials for liability and damages. Courts considering offer of judgment statutes

analogous to Florida's have determined that parties may propose offers of

judgment after the first phase of the trial is resolved, as long as the timeliness requirement is met in relation to the date of the second phase of the trial.

Auto-Owners distinguishes these cases on the basis of the procedural history of the instant dispute. Auto-Owners's primary argument is that there must be a nexus between the dispositive judgment and the timeliness requirement of the offer of judgment. That is to say, they believe that it is improper to measure the timeliness of Southeast's offer according to the date of the second trial when the outcome of the case was decided by the judgment in the first trial. Auto-Owners also notes that Florida, like Nevada, the District of Columbia, and other jurisdictions that have an offer of judgment statute, provides for payments of attorney's fees to a defendant only if the judgment is less favorable to the plaintiff than the proposed offer.[3] Auto-Owners argues that this statutory comparison of the offer and the ultimate judgment supports its position that there must be a nexus between the two. In bifurcated trial cases like <u>Allianz</u>, the party seeking attorney's fees was dependant on the outcome of the forthcoming trial to determine the reasonableness of their offer; therefore, these cases represented instances where the offer in question satisfied the nexus with the determinative judgment for which Auto-Owners advocates.

_____

[3] <u>See</u> Fla. Stat. § 768.79; Nev. R. Civ. P. 68; D.C. Super. Ct. Civ. R. 68.

Southeast argues that Auto-Owners's proposed nexus requirement is at odds with the purpose of the statute. "[R]ule 1.442 is punitive in nature, [and] its purpose is to sanction a party who unreasonably refuses to settle by shifting the payment of attorney's fees." Mills v. Martinez, 909 So. 2d 340, 343 (Fla. 5th DCA 2005). "'Encouraging settlement lowers litigation costs for the parties and reduces the fiscal impact of litigation on the court system . . . .'" Allstate Prop. & Cas. Ins. Co. v. Lewis, 14 So. 3d 1230, 1235 (Fla. 1st DCA 2009) (quoting BDO Seidman, LLP v. British Car Auctions, Inc., 802 So. 2d 366, 371–72 (Fla. 4th DCA 2001) (Gross, J., concurring specially) (citations omitted)). The purpose of settling cases and avoiding litigation and court costs would be furthered by allowing offers of judgment before second trials, regardless of any nexus to the judgment that ultimately decided the case. At the time that Southeast proposed its $300,000 offer, it appeared that the parties were headed to a second trial. Acceptance of the offer would have saved the parties and courts a substantial amount of time and money.

Although Auto-Owners offers no satisfactory explanation for how a nexus requirement would further the purpose of the statute, it does point to possible issues of fairness that could arise in such cases. Florida courts have held that offers of judgment submitted after the final judgment is entered but before the notice of

8

appeal is filed may not be used to recover attorney's fees incurred during that appeal. See, e.g., Glanzberg v. Kauffman, 771 So. 2d 60, 61 (Fla. 4th DCA 2000) (per curiam). The court in Glanzberg stated, "Litigants (particularly defendants) who file after the conclusion of trial have the benefit of knowing the jury's verdict, from which they can calculate the exact amount for which they must offer to settle in order to be entitled to attorney's fees under section 768.79 if they were to win on appeal." Id. However, the court in that case did go on to state in dicta that attorney's fees could be properly awarded for second trials and that Glanzberg could be entitled to attorney's fees if she were to prevail after remand. Id.

The cautionary advice in Glanzberg is potentially applicable to many or most cases that proceed to a second trial after the grant of a motion for a new trial. A party filing an offer of judgment before the second trial at least has the advantage of knowing the value that the first jury placed upon the case.[4] For example, in the case of a defendant prevailing in the first trial, like Southeast here, the defendant might have filed an offer of judgment in a nominal amount, hoping that the second jury would mimic the first jury or that the defendant might ultimately prevail on appeal and succeed in reinstating the first jury verdict. Of course, Fla. Stat. §

---

[4] On the other hand, of course, the offeree of such a proposal for settlement would also have the same knowledge.

768.79(7) provides that a trial court may disallow an award of fees upon determining that an offer of judgment (like the nominal one in our hypothetical example) was not made in good faith. Although it is fairly clear that Southeast's offer of judgment in this case was not made in bad faith,[5] extant Florida case law is unclear as to the significance to be placed upon the cautionary advice in Glanzberg. It is unclear whether the Florida Supreme Court would decide to handle such cases on a case-by-case basis, deciding in each case whether the offer was made in good faith, or whether that Court would prefer a bright-line rule and invalidate all offers of judgment filed after a first jury verdict.

Because the language of the statute and the intent of the Florida legislature are unclear, and because there are no Florida cases that conclusively indicate what the proper interpretation should be, we respectfully certify to the Florida Supreme Court the following question:

DOES FLA. STAT. § 768.79 ALLOW FOR VALID OFFERS OF JUDGMENT IN A SEPARATE SECOND TRIAL; AND, IF SO, MAY OFFERS BE DEEMED VALID IN INSTANCES WHERE AN APPELLATE COURT REINSTATES THE JUDGMENT OF THE FIRST TRIAL?

---

[5] Auto-Owners has not argued on appeal that Southeast's offer was made in bad faith, and the offer of $300,000 was clearly not nominal.

B. Was Southeast's offer rendered a nullity because it was a joint proposal?[6]

Florida Rule of Civil Procedure 1.442(c)(3) states, "A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party." Joint proposals that do not state the terms attributable to each party are invalid and unenforceable. See, e.g., Att'ys' Title Ins. Fund, Inc. v. Gorka, 36 So. 3d 646, 650–51 (Fla. 2010) (per curiam); Graham v. Peter K. Yeskel 1996 Irrevocable Trust, 928 So. 2d 371, 372 (Fla. 4th DCA 2006).

Auto-Owners claims that the offer of judgment in question was a joint proposal from Southeast and co-defendant Alan Simpson that failed to identify the terms attributable to each party. The Florida Supreme Court has held that proposals are invalid when offered to multiple parties and conditioned upon acceptance by all. Gorka, 36 So. 3d at 649, 651–52. Likewise, offers made by multiple parties that fail to attribute the terms applicable to each are not in compliance with Rule 1.442(c)(3). Willis Shaw, 849 So. 2d at 278–79.

---

[6] The District Court did not address this issue because it was mooted by that court's holding that the offer was untimely. Appellant concedes that this Court can affirm the lower court's decision on the basis of any claim that was made to the trial court. Thus, this argument of Auto-Owners and those discussed below must be evaluated because they constitute alternative grounds for affirmance.

In this case, Auto-Owners makes several arguments suggesting that Southeast's offer of judgment was an invalid joint proposal or was vague or ambiguous. We reject some such arguments outright,[7] and we certify one argument. The argument that we certify is Auto-Owners's contention that the offer of judgment was an invalid joint proposal because it required the resolution of and dismissal with prejudice of Auto-Owners's claim against a third party to the offer, Simpson, without stating the terms attributable to each party.

---

[7] We reject outright Auto-Owners's argument that it was not clear who the parties to the offer of judgment were. Auto-Owners argues that it was not clear whether or not Simpson was a party. The introductory paragraph of the offer referred twice to "Defendant" in the singular and expressly provided that Southeast Floating Docks, Inc. was the offeror. Only one offeror was named, and this was Southeast, not Simpson. We conclude that the offer was not ambiguous in this regard.

Auto-Owners also argues that the offer of judgment was ambiguous in that it was unclear whether it required Auto-Owners to give up its right to assert unrelated claims in other suits. Auto-Owners relies upon Palm Beach Polo Holdings, Inc. v. Village of Wellington, 904 So. 2d 652, 653 (Fla. 4th DCA 2005). Auto-Owners fails to point to any language in the proposal that was unclear in this regard. Contrary to Auto-Owners's argument, the offer of judgment expressly provided for the resolution of "[a]ll issues and claims asserted by Plaintiff in this action against Defendants" and expressly provided for a "dismissal with prejudice of this action." There is no language in the offer of judgment suggesting that claims unrelated to the instant suit might be affected.

Auto-Owners's other arguments with respect to vagueness or ambiguity are so conclusory that they are deemed abandoned. See Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.") (citation omitted); United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (holding that to avoid being abandoned, claims must be unambiguously demarcated so that there is no confusion as to which issues are being argued) .

It is true that the offer of judgment required the resolution of and the dismissal with prejudice of Auto-Owners's claims in this action—not only its claims against Southeast, but also its claims against Simpson. However, the Florida Fourth District Court of Appeal has held that an offer of settlement made by one party to another party is not transformed into a joint proposal simply because it conditions acceptance on the dismissal of claims against a third party. See Alioto-Alexander v. Toll Bros., 12 So. 3d 915, 917 (Fla. 4th DCA 2009). If Toll Bros. correctly reflects Florida law, it would control the resolution of this issue and mandate a rejection of Auto-Owners's argument that the instant offer of judgment is an invalid joint proposal. If we were not in any event certifying the issue discussed above in Part II.A., we would simply follow Toll Bros. and reject Auto-Owners's argument that the offer of judgment in this case was a joint proposal and therefore invalid. However, because Toll Bros. is a decision of an intermediate appellate court, and because we have found no pertinent case from the Florida Supreme Court, it is possible that the Florida Supreme Court may desire to review the rule of Toll Bros. Therefore, we certify the following question:

DOES THE CONDITIONING OF AN OFFER OF JUDGMENT ON THE RESOLUTION AND DISMISSAL WITH PREJUDICE OF THE OFFEREE'S CLAIMS IN THE ACTION AGAINST A THIRD-PARTY RENDER THE OFFER OF JUDGMENT A JOINT PROPOSAL, AS THAT TERM IS USED IN FLORIDA RULE OF CIVIL PROCEDURE 1.442(c)(3)?

C. Do Florida's choice-of-law rules mandate the application of Michigan law to this case?

Auto-Owners claims that Michigan law should apply to this case because the parties agreed to apply the substantive law of Michigan in a choice-of-law provision in the indemnity agreement on which Auto-Owners sued. At least one Florida District Court of Appeal has held that § 768.79 applies to all civil cases in Florida, regardless of the substantive law of the case. See BDO Seidman, 802 So. 2d at 369. Auto-Owners attempts to distinguish the instant case on the basis of the fact that the choice of law at issue was contractually agreed upon.

If we were not in any event certifying the issue described above in Part II.A., we would follow BDO Seidman and reject Auto-Owners's

14

argument that Michigan law applies. We would reject Auto-Owners's attempt to distinguish <u>BDO Seidman</u>. It is true that this case is different from <u>BDO Seidman</u> in that it was a tort case whereas this case involves a choice-of-law provision in a contract. However, in light of the holding and rationale of <u>BDO Seidman</u>, we do not believe that this factual difference undermines that case as precedent for this case. The holding in <u>BDO Seidman</u> did not depend on the kind of case that was involved. Rather, it held that § 768.79(1) is clear and applies to "'<u>any</u> civil action for damages filed in the courts of this state . [. . .]'" <u>Id.</u> at 368 (quoting Fla. Stat. § 768.79(1) (1991) (emphasis added)). Thus, the court held that the Florida offer of judgment statute "should be applied without engaging in a conflict of laws analysis." <u>Id.</u> The court also reasoned:

> Our conclusion that section 768.79 applies to all civil actions for damages brought in Florida courts is consistent with the legislative intent, which is to reduce litigation. An action for damages based on the substantive law of another jurisdiction has the same impact on the Florida court system as one based on the substantive law of Florida.

<u>Id.</u> at 369 (internal citation omitted).

<u>BDO Seidman</u> also stated that § 768.79 is procedural, not substantive. <u>Id.</u> at 369. <u>See also id.</u> at 370–74 (Gross, J., concurring specially) (explaining

15

why § 768.79 is procedural). Thus, the contractual choice-of-law provision would not apply in any event. See Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998) ("Contractual choice-of-law clauses incorporate only substantive law, not procedural provisions."); Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992) (holding that contractual choice-of-law provisions do not apply to statutes of limitations in jurisdictions that deem such provisions to be procedural for the purposes of the choice-of-law analysis); FDIC v. Petersen, 770 F.2d 141, 142 (10th Cir. 1985) ("Choice-of-law provisions in contracts are generally understood to incorporate only substantive law."); Gaisser v. Portfolio Recovery Assocs., LLC, 571 F. Supp. 2d 1273, 1276 (S.D. Fla. 2008) (holding that statute of limitations was governed by contractual choice-of-law provision only because Florida law deemed statutes of limitations to be substantive). "Whether this lawsuit expended Florida's judicial resources is not a concern of" Michigan. BDO Seidman, 802 So. 2d at 372 (Gross, J., concurring specially).

However, because we are in any event certifying the issue discussed in Part II.A., because BDO Seidman is a decision of an intermediate appellate court, and because we found no pertinent case from the Florida Supreme Court,

it is possible that the Florida Supreme Court may desire to address the conflict of laws issue.  Therefore, we certify the following question:

DOES FLA. STAT. § 768.79 APPLY TO CASES THAT ARE GOVERNED BY THE SUBSTANTIVE LAW OF ANOTHER JURISDICTION; AND, IF SO, IS THIS STATUTE APPLICABLE EVEN TO CONTROVERSIES IN WHICH THE PARTIES HAVE CONTRACTUALLY AGREED TO BE BOUND BY THE SUBSTANTIVE LAWS OF ANOTHER JURISDICTION?

"The phrasing of these [three] questions is not intended to limit the Florida Supreme Court's consideration of the issues involved or the manner in which it gives its answers."  MCI WorldCom Network Servs. v. Mastec, Inc., 370 F.3d 1074, 1079 (11th Cir. 2004) (internal citations omitted).  In order to assist in the resolution of these questions, the record in this case and the briefs of the parties shall be transmitted to the Florida Supreme Court.

QUESTIONS CERTIFIED.